IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

FILED
2013 AUG 13 PM 12: 05

DR. DOUGLAS GORDON HESBOL,

            Plaintiff,

v.

BOARD OF EDUCATION OF
LARAWAY COMMUNITY
CONSOLIDATED SCHOOL
DISTRICT 70-C and GARY KNIGHT,
DEBRA RAUSCH, MARGE FLEET,
SCOTT GLASSCOCK, DAVID
MATENAER, PHIL RAUSCH and
GARY WASHINGTON, each in their
individual capacities,

            Defendants.

NO. 13L 0646

## COMPLAINT

NOW COMES the Plaintiff, DR. DOUGLAS GORDON HESBOL ("DR. HESBOL"), by his attorneys, Law Office of Mark C. Metzger, and for his Complaint against the BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT 70-C (the "Board") and GARY KNIGHT, DEBRA RAUSCH, MARGE FLEET, SCOTT GLASSCOCK, DAVID MATENAER, PHIL RAUSCH and GARY WASHINGTON (each of the last seven in their individual capacities) states as follows:

### Facts Common to All Counts

1.     Dr. Hesbol was, at all times relevant hereto, employed by the Board as Superintendent of Schools.

Initial case management set for
12-2-13 at: 9 am / pm
Will County Court Annex



EXHIBIT
A

2.      The Board of Education of Laraway Community Consolidated School District 70-C is a duly elected Board of Education that operates an Illinois public school district serving elementary school students in western Will County. The Board is a body politic and corporate and was organized pursuant to the Illinois School Code. The Board operates two schools and educates just under 400 students at present.

3.      On or about July 27, 2004, the then-current Board hired Dr. Hesbol to serve as Superintendent of Schools for a term of four years. A true and correct copy of that contract is attached hereto as Exhibit A. Although that contract ran through June 30, 2008, Dr. Hesbol continued to serve as Superintendent of Schools as the Board worked to finalize a new contract. The new contract was entered on March 17, 2009, covering Dr. Hesbol's period of service as Superintendent from July 1, 2008 and calling for it to continue through June 30, 2013. A true and correct copy of that contract is attached hereto as Exhibit B.

4.      At the same time, March 17, 2009, the Board adopted a resolution amending that contract and extending it for an additional year, through June 30, 2014. The resolution extending the contract is attached hereto as Exhibit C.

5.      Section 10-23.8 of the Illinois School Code authorizes Boards of Education in Illinois to employ a Superintendent of Schools. More specifically, that section empowers Boards to employ a Superintendent for either a one-year period or a multi-year period not to exceed five years. Multi-year Superintendent

- 2 -

contracts are required to be "performance-based contracts" that must be linked to student performance and academic improvement.

6.    Exhibit A plainly states that it is a performance-based contract.

7.    Exhibit B plainly states that it is a performance-based contract.

8.    Because Exhibit C merely extended Exhibit B, the current contract also plainly states that it is a performance-based contract.

9.    The current contract, like its predecessors, is limited in scope to employing Dr. Hesbol as Superintendent of Schools and for no other purpose.

10.    No part of the current contract reserves to the Board the authority to alter the employment of Dr. Hesbol into any role other than the Superintendency.

11.    As a part of the resolution that is Exhibit C, the Board concluded that the goals of the prior contract had been met. The Board made a similar pronouncement in the preamble language of Exhibit B with regard to Dr. Hesbol's performance under Exhibit A.

12.    Each of the contracts (attached hereto as Exhibits A, B & C) contained a provision calling for the Board to later adopt goals to meet the requirement that a multiyear contract have such items included.

13.    The responsibility of a public school board of education is to set an overall direction for the school district and then to cede day-to-day management of the district to the Superintendent and his or her appointees.

14.    In general, micro-management of a school district and/or its Superintendent by a school board (including, but not limited to the substitution of

a Board's decision-making or discretion for that the administration in management matters) is frowned upon as a poor practice.

15.     Any effort by less than a majority of a board of education to direct the administration or staff in the day-to-day activities and operation of a school district is poor practice.

16.     Any effort by less than a majority of a board of education to direct the administration or staff in the day-to-day activities and operation of a school district is not direction that is binding on the administration or staff.

17.     Following the school board elections in April of 2011, the relationship between Dr. Hesbol and Board member Marge Fleet worsened. This occurred despite Fleet engaging in frequent, almost daily, communication with Dr. Hesbol.

18.     Upon information and belief, Fleet began roiling other members of the Board, agitating for the replacement of Dr. Hesbol.

19.     At least in part, the worsening state of affairs between Dr. Hesbol and Fleet stemmed from Dr. Hesbol's unwillingness to accept direction from Fleet alone.

20.     On May 17, 2011, United States District Court Judge James Holderman released a Memorandum and Opinion in a case pending before him in a case styled *Wynn v. Board of Education of School District No. 159*, which opinion is published at 815 F.Supp.2d 1007 (2011). (The "*Wynn* Decision").

21.    The *Wynn* case was filed by an Illinois Superintendent of Schools who raised various legal theories in connection with his board of education's failure to honor the remaining years on the contract employing him as Superintendent of Schools.  In the *Wynn* Decision, Judge Holdermann dismissed the due process elements of Wynn's claim because Wynn's contract did not contain performance goals.

22.    That Wynn's contract did not contain goals at the time it was adopted was neither unexpected nor unusual.  By the time Dr. Wynn's contract was adopted, the practice of adopting a multi-year Superintendent's contract without goals, but containing a clause calling for the later inclusion of goals had become a normal one among Illinois public school district boards of education.

23.    While the precise reasons for this practice varied from district to district, there were important public policy objectives achieved in doing so that included giving the Board and the Superintendent time to identify so-called "SMART" (Specific, Measurable, Attainable, Reasonable and Time-based) goals, as opposed to vague statements about school improvement and student learning designed to meet the time deadline of a school year that begins on July 1 each year.

24.    News of the *Wynn* Decision began making its way through the Illinois public school community in late May and early June of 2011.

25.    In that time frame, Marge Fleet learned of the *Wynn* Decision and inquired of the district's attorneys about the possibility that the Board might be able to use the *Wynn* Decision as an excuse to secure the dismissal of Dr. Hesbol.

- 5 -

26.     Dr. Hesbol learned of the inquiry when the school district's attorney, John Izzo, included Fleet's inquiry in a response to questions raised by Dr. Hesbol.

27.     Mr. Izzo is an attorney with the Sraga, Hauser, LLC law firm that represented both the Laraway CCSD 70-C school district was and School District 158 in the *Wynn* case. On information and belief, the same contract template, authored by that same law firm, was used in both districts as well.

28.     Following Fleet's inquiry, Mr. Izzo advised Dr. Hesbol that in the wake of the *Wynn* Decision, his firm was prepared to update the Superintendent's contract at no additional charge. In fact, Mr. Izzo advised that his firm was offering to do so for all of the firm's clients.[1]

29.     The Board met in closed session without Dr. Hesbol several times in the Summer of 2011.

30.     On August 11, 2011, Fleet and Gary Knight met with Dr. Hesbol in Dr. Hesbol's office. Mr. Izzo was present at the meeting and provided Dr. Hesbol with a written list of purported actions and failings by Dr. Hesbol that the Board contended constituted cause for his ouster as Superintendent. Mr. Izzo, on behalf of the Board of Education, informed Dr. Hesbol that he could respond to the list of purported charges either verbally at that time or after a brief time, in writing.

31.     Dr. Hesbol was not advised prior to the August 11, 2011 meeting what the nature of the meeting was, nor was he advised of the Board's interest in, or intention of, removing him from the Superintendency.

---

[1] This was certainly the least the law firm could do after moving in federal court to invalidate the very contract it drafted and negotiated into place in multiple client districts.

32.     The list of charges was merely a pretext to disguise the Board's decision to align with Fleet and remove Dr. Hesbol as Superintendent. Indeed, the majority of the purported "charges" were factually incorrect statements to begin with, such as the allegation that district performance on standardized tests had declined.

33.     Dr. Hesbol elected to respond in writing, in part to investigate the items on the list, none of which was the subject of any prior complaint, direction or comment by the Board. Dr. Hesbol submitted his written response to the Board by delivery to Mr. Izzo.[2]

34.     Following perfunctory consideration of his responses in a closed session meeting that did not include Dr. Hesbol on August 12, 2011, the Board informed Dr. Hesbol that he was being removed as Superintendent of Schools.

35.     Owing to the failure of the Board to give him notice prior to April 1, 2011 (something required in the Illinois School Code), however, the Board advised Dr. Hesbol that he would be assigned to the role of Principal at one of the District's schools (Oak Valley) for the 2011-2012 school year, with the salary and benefits of his Superintendent contract to remain unchanged. Despite the Board's action, the district continued to represent to the Illinois State Board of Education for the entire 2011-2012 school year that Dr. Hesbol was serving as the district's Superintendent of Schools.

---

[2] The purported charges and the response discuss, in part, certain personnel items involving school district employees other than Dr. Hesbol. Dr. Hesbol has, therefore, elected not to file them with this Complaint and has not, therefore, attached them as Exhibits.

36.   Dr. Hesbol was not given a hearing prior to being removed as Superintendent.

37.   On August 12, 2012, the Board, through its attorney, John Izzo, advised Dr. Hesbol that his contract would not be honored following the conclusion of the 2011-2012 school year, despite it containing an additional two years of service duration.

38.   Dr. Hesbol was not given a hearing prior to being advised that his contract would not be honored for the remainder of its duration.

39.   The Board made no secret of its position that it was entitled run roughshod over Dr. Hesbol and his contract, property and other rights, owing to the *Wynn* Decision.

40.   In fact, the *Wynn* Decision gives the Board no such entitlement, for a number of reasons, including but not limited to, the factual differences between the circumstances of the *Wynn* plaintiff and Dr. Hesbol, the fact that a United States District Court opinion is not binding on anyone other than the participants of the particular case in which the decision is made, and the erroneous conclusion contained therein that Dr. Wynn's contract was void.

41.   Agendas for the Board's meetings were developed by Dr. Hesbol in consultation with the Board President.  From the time his most recent contract was entered, Dr. Hesbol made several attempts to add performance goals to the Board's agenda.  Each time, the Board President declined and he directed Dr. Hesbol not to include that item on the agenda.

42.     Because the Board had invoked the *Wynn* case, it was forced, for reasons of consistency, to adopt the position that Dr. Hesbol had acquired tenure rights as a teacher in the school district.

43.     The Illinois School Code plainly states that only administrators on multi-year contracts do not acquire tenure rights as teachers in the school district in which they are working as administrators. By contrast, those administrators on one year contracts can earn tenure.

44.     The Illinois School Code requires that each school district publish a list of all tenured teachers in the district no later than November 1 of each year, expressing their relative rank or "seniority." Among other things, the purpose of the list is to provide and identify the right of more senior tenured teachers to "bump" more junior teachers from positions in the event of a layoff.

45.     Despite the Board's insistence that Dr. Hesbol was not on a multi-year contract, his name has never appeared on the Laraway School District's seniority list, including the list prepared for the November 1, 2011 deadline – well after the Board had adopted its erroneous position based on the *Wynn* Decision.

46.     In addition to the certifications and endorsements that permitted him to work as Superintendent of Schools, and a Type 75 general administrative endorsement, Dr. Hesbol was certified to teach in the Chicago Public Schools, but none of those certifications were for teaching at the elementary level outside of the Chicago Public School system.

47.    In order to maintain consistency with their *Wynn* Decision induced actions, the Board was forced to acknowledge that Dr. Hesbol had acquired tenure, such that they would be required to offer him a classroom position, starting with the 2012-2013 school year.

48.    In the Spring of 2012, the Board learned that Dr. Hesbol did not hold any valid elementary teaching certificates, making it impossible for the Board to employ him as a tenured teacher in their elementary schools upon the commencement of the 2012-2013 school year.

49.    In the Spring of 2012, the Board directed Dr. Hesbol to report to them the status of his elementary teaching certificates. Dr. Hesbol responded that he held no such valid certificates.

50.    Thereafter, the Board directed Dr. Hesbol to take steps to acquire or renew his elementary teaching certificates.

51.    Dr. Hesbol declined to do so, noting that he had no interest, desire, or legal obligation to accept employment by the Board as an elementary teacher.

52.    Thereafter, the Board presented Dr. Hesbol with charges of insubordination for failing to comply with its demands regarding the elementary teaching certificates.

53.    Following a hearing on the charge of insubordination on June 19, 2012, the Board voted to entirely terminate Dr. Hesbol's employment, effective June 22, 2012.

54.    The Board terminated Dr. Hesbol's pay as of June 22, 2012.

55.    As noted above, Dr. Hesbol was employed for the 2011-2012 school year as an elementary school Principal on the terms of his current contract, not as a tenured teacher. No elementary teaching certificates were required for Dr. Hesbol to perform as either Superintendent of Schools or Principal.

56.    The Board's decision to terminate Dr. Hesbol caused the cessation of not only his pay, but also various benefits and rights. Consistent with his obligation to mitigate his damages, Dr. Hesbol thereafter elected to file paperwork to commence his retirement as an Illinois schoolteacher and administrator.

57.    The activation of that retirement does not make Dr. Hesbol unavailable for employment, since the Teachers Retirement System ("TRS") permits an annuitant to un-retire at any time by simply accepting another position that is TRS eligible for no more than 100 days duration or more than 500 hours of time.

## COUNT I
## BREACH OF EXPRESS CONTRACT

58. – 114.    As and for paragraphs 58-114 of this Count I, the plaintiff reasserts and re-alleges paragraphs 1-57.

115.    Dr. Hesbol was employed as Superintendent of Schools on his current contract as of March 17, 2009, at an initial salary of $140,795, plus benefits that included retirement contributions to TRS (calculated as a percentage of salary), and various other benefits, including health insurance and the right to

membership dues in some organizations and the right to attend meetings and conferences at the expense of the Board. The contract also included 6% salary enhancements for each subsequent year.

116. Dr. Hesbol accepted that employment and a contract was thereby formed.

117. The contract, attached hereto as Exhibit C, runs through the 2013-2014 school year.

118. The Board's actions in honoring the notice elements of the contract constitute a ratification of the contract that cured any defect in the agreement and/or constitute proof of the Board's intention to be bound by a multi-year agreement.

119. The Board breached that contract by one or more of the following actions:

    a.    Assigning Dr. Hesbol responsibilities other than those of Superintendent of Schools.

    b.    Terminating Dr. Hesbol's employment June 2012 for failing to obtain teaching certificates not related to either the contract or the position to which he had been wrongfully assigned.

    c.    Failing to honor and pay Dr. Hesbol for, the remaining years on the contract.

    d.    Failing to discuss and adopt performance goals.

- 12 -

e.    Failing to evaluate Dr. Hesbol in writing, per the terms of the

contract, more than once in seven years.

f.    Failing to provide Dr. Hesbol with hearings and to otherwise

adhere to the termination provisions of the contract.

g.    Such other actions as the discovery in this cause may elicit.

120.    As a direct and proximate result of the Board's breach of the

contract, Dr. Hesbol has, and will, suffer damages.  Those damages include the

loss of salary and benefits for the remaining two years of the contract, the loss of a

larger retirement pension that would have resulted from both additional years of

service and the inclusion of more years of higher pay in the retirement calculations,

and the loss of the ability to recover educational expenses due to continued service

in the Laraway school district.

WHEREFORE, the plaintiff, Dr. DOUGLAS GORDON HESBOL, prays

that this Honorable Court enter judgment in his favor and against the defendant,

BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED

SCHOOL DISTRICT 70-C and award damages in a sum equal to:

1.    The amount of salary of which Dr. Hesbol was deprived for the

2011-2012 school year.

2.    The amount of salary for the remaining two years of the contract.

3.    The amount of the contributions the defendant Board would have

made to TRS for each of items 1 and 2.

- 13 -

4.     The amount by which Dr. Hesbol's retirement annuity would have been enlarged by reason of all of the foregoing for the actuarial remainder of Dr. Hesbol's life.

5.     The sum necessary to fully compensate Dr. Hesbol for all incidental and consequential damages, including his interrupted ability to have educational expenses reimbursed for his service to the Laraway School District.

6.     An amount equal to the unused vacation pay, totaling ten (10) days of pay.

7.     Such other and further relief as the Court deems just.

## COUNT II
## BREACH OF IMPLIED CONTRACT

121. – 178.     In the alternative to Count I, the plaintiff re-asserts and re-alleges the allegations contained in paragraphs 1-57 as and for paragraphs 121-178 of this Count II.

179.     Dr. Hesbol was employed as Superintendent of Schools on his current contract as of March 17, 2009, at an initial salary of $140,795, plus benefits that included retirement contributions to TRS (calculated as a percentage of salary), and various other benefits, including health insurance and the right to membership dues in some organizations and the right to attend meetings and

- 14 -

conferences at the expense of the Board. The contract also 6% salary enhancements for each subsequent year.

180. Dr. Hesbol accepted that employment and a contract was thereby formed.

181. By their actions, words and deeds, the parties formed an implied contract consistent in every way with what is described in Exhibits B and C, through the 2013-2014 school year, and intended that this would be a contract leading to Dr. Hesbol's retirement by providing him with the maximum raises permitted for a Board to pay its Superintendent without incurring retirement penalties.

182. The Board's actions in honoring the notice elements constitute a ratification of the contract that cured any defect in the agreement and/or constitute proof of the Board's intention to be bound by a multi-year agreement.

183. The Board breached that contract by one or more of the following actions:

    a.    Assigning Dr. Hesbol responsibilities other than those of Superintendent of Schools.

    b.    Terminating Dr. Hesbol's employment as of June, 2012 for failing to obtain teaching certificates not related to either the contract or the position to which he had been wrongfully assigned.

    c.       Failing to honor and pay Dr. Hesbol for, the remaining years on the contract.

    d.       Failing to discuss and adopt performance goals.

    e.       Failing to provide Dr. Hesbol with hearings and to otherwise adhere to the termination provisions of the contract.

    f.       Such other actions as the discovery in this cause may elicit.

184.    As a direct and proximate result of the Board's breach of the contract, Dr. Hesbol has, and will, suffer damages. Those damages include the loss of salary and benefits for the remaining two years of the contract, the loss of a larger retirement pension that would have resulted from both additional years of service and the inclusion of more years of higher pay in the retirement calculations, and the loss of the ability to recover educational expenses due to continued service in the Laraway school district.

WHEREFORE, the plaintiff, Dr. DOUGLAS GORDON HESBOL, prays that this Honorable Court enter judgment in his favor and against the defendant, BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT 70-C and award damages in a sum equal to:

1.    The amount of salary of which Dr. Hesbol was deprived for the 2011-2012 school year.

2.    The amount of salary for the remaining two years of the contract.

3.    The amount of the contributions the defendant Board would have made to TRS for each of items 1 and 2.

4.    The amount by which Dr. Hesbol's retirement annuity would have been enlarged by reason of all of the foregoing for the actuarial remainder of Dr. Hesbol's life.

5.    The sum necessary to fully compensate Dr. Hesbol for all incidental and consequential damages, including his interrupted ability to have educational expenses reimbursed for his service to the Laraway School District.

6.    An amount equal to the unused vacation pay, totaling ten (10) days of pay.

7.    Such other and further relief as the Court deems just.

## COUNT III
## REFORMATION

185. – 242.    In the alternative to the foregoing, the plaintiff re-asserts and re-alleges the allegations contained in paragraphs 1-57 as and for paragraphs 185-242 of this Count III.

243.    The intention of the parties was for Dr. Hesbol to serve as Superintendent of Schools for the Laraway School District through the 2013-2014 school year and to do so on terms fully consistent with those depicted on Exhibit B as modified by Exhibit C. That is, the parties agreed to, and did, reduce their intentions to writing, and Exhibits B and C reflect that effort.

244. To the extent that *Wynn* Decision (or its equivalent result) applies to the facts set forth herein, it does so by virtue of the parties' failure to recognize the inadvisability of the by then normal practice of adopting a contract and later adopting the performance goals. That is, the contract is deficient only in the failure to have included some sort of performance goals at the outset. In that way, a variance exists between what the parties intended and what was actually included in the written contracts making up Exhibits B and C. Specifically, Exhibits B and C were lacking performance goals at the outset.

245. Neither party intended to make the contract that arose out of Exhibits B and C unenforceable or void. As such, the written contracts represent a mistake in implementing the wishes of the parties, such that the contract should now be reformed.

245. Reforming the contract to include performance goals as of the outset of the contract would restore the parties to their intended position of a multi-year contract through the 2013-2014 school year and would not remake the bargain in any way.

WHEREFORE, the Plaintiff, DR. DOUGLAS GORDON HESBOL, prays that this Honorable Court enter judgment in his favor and against the defendant, BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT 70-C and reform the contract to add performance goals as of the signing date of the contract and order the reinstatement of Dr. Hesbol as Superintendent of Schools, effective retroactive to July 1, 2012.

## COUNT IV
## MISREPRESENTATION/WANT OF
## GOOD FAITH & FAIR DEALING/ESTOPPEL

246. – 303.   In the alternative to the foregoing, the plaintiff re-asserts and re-alleges the allegations contained in paragraphs 1-57 as and for paragraphs 246-303 of this Count IV, and as an alternative to Counts I, II & III.

304.   The contract that is the result of Exhibit C amending Exhibit B reflects the will and intention of the parties at the time they adopted it.

305.   The Board, through its attorneys, offered a template contract to Dr. Hesbol that the Board's attorneys knew or should have known to be invalid, by virtue of its failure to include performance goals, as evidenced by the same law firm attacking the same template agreement as being invalid for the lack of the inclusion of performance goals.

306.   Implied in the dealings between parties to a contract is an obligation to offer and negotiate a legally valid agreement.

307.   Dr. Hesbol relied on the Board to act in conformity with the law and to refrain from offering and/or negotiating for an invalid contract.

308.   By virtue of the Board's failure to offer and negotiate a valid contract, (and/or its implied misrepresentation as to the validity of the contract) the Board should now be estopped from using that latent invalidity to avoid its obligations under the contract.

WHEREFORE, the plaintiff, DR. DOUGLAS GORDON HESBOL, prays that this court enter judgment in his favor and against the BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT 70-C and award damages in a sum equal to:

1.   The amount of salary of which Dr. Hesbol was deprived for the 2011-2012 school year.

2.   The amount of salary for the remaining two years of the contract.

3.   The amount of the contributions the defendant Board would have made to TRS for each of items 1 and 2.

4.   The amount by which Dr. Hesbol's retirement annuity would have been enlarged by reason of all of the foregoing for the actuarial remainder of Dr. Hesbol's life.

5.   The sum necessary to fully compensate Dr. Hesbol for all incidental and consequential damages, including his interrupted ability to have educational expenses reimbursed for his service to the Laraway School District.

6.   Such other and further relief as the Court deems just.

**COUNT V
DEPRIVATION OF DUE PROCESS**

309. – 366.   The plaintiff re-asserts and re-alleges the allegations contained in paragraphs 1-57 as and for paragraphs 309-366 of this Count V.

367. The contract that is the result of Exhibit C extending Exhibit B gives Dr. Hesbol a property interest in his continued employment that is constitutionally protected under both the Due Process clause of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §1983.

368. That contract also gives Dr. Hesbol a present entitlement to position, the salary and the benefits identified in the contract.

369. The Constitution and the protections extended by §1983 required that Dr. Hesbol be given some form of formal hearing (that is, procedural due process), both prior to and following (a) his removal as Superintendent and (b) the decision to terminate the contract as of the end of the 2011-2012 school year.

370. Dr. Hesbol was not afforded any such hearings.

371. The Board, by failing to afford Dr. Hesbol these hearings, acted under color of law and thereby knowingly, intentionally and egregiously violated the Due Process Clause of the Fourteenth Amendment to the Constitution.

372. As a result of the Board's unlawful actions, Dr. Hesbol has been deprived of property rights and interests and has and will suffer immediate and irreparable harm.

373. The actions of the Board subject the members of the Board to individual liability.

WHEREFORE, the plaintiff, DR. DOUGLAS GORDON HESBOL, prays that this Honorable Court enter judgment in his favor and against the defendants, BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED

SCHOOL DISTRICT 70-C (the "Board") and GARY KNIGHT, DEBRA RAUSCH, MARGE FLEET, SCOTT GLASSCOCK, DAVID MATENAER, PHIL RAUSCH and GARY WASHINGTON, each individually, by reason of their failure to provide him with hearings prior to terminating property interests and thereby violating his due process rights and award damages as follows:

1.  The amount of salary of which Dr. Hesbol was deprived for the 2011-2012 school year.

2.  The amount of salary for the remaining two years of the contract.

3.  The amount of the contributions the defendant Board would have made to TRS for each of items 1 and 2.

4.  The amount by which Dr. Hesbol's retirement annuity would have been enlarged by reason of all of the foregoing for the actuarial remainder of Dr. Hesbol's life.

5.  The sum necessary to fully compensate Dr. Hesbol for all incidental and consequential damages, including his interrupted ability to have educational expenses reimbursed for his service to the Laraway School District.

6.  Dr. Hesbol's attorneys fees and costs incurred in pursuit of his rights.

7.  Exemplary damages in a sum designed to make clear to the Board, and other boards of education, that denials of such rights will not be tolerated.

8.    Such other and further relief as the Court deems just.


Respectfully submitted,


_____
One of the attorneys for the plaintiff,
DOUGLAS GORDON HESBOL

Mark C. Metzger (06201626)
Law Office of Mark C. Metzger
34 W. Chicago Avenue, Suite B
Naperville, IL 60540
630-355-5555

## VERIFICATION

Under penalties as provided by law, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, I state that I am the Plaintiff in the foregoing action and that I have read the foregoing Complaint and confirm and certify that the statements set forth therein are true and correct.

_____

Douglas Gordon Hesbol

Attorney ID 42411
Mark C. Metzger
Law Office of Mark C. Metzger
PO Box 6285
Aurora, IL 60598-0285
630-898-8600

```
OFFICIAL SEAL
MARK C METZGER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/23/14
```

## SUPERINTENDENT'S EMPLOYMENT CONTRACT

**THIS CONTRACT** is made this 27th day of July, 2004 by and between the **BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 70-C, JOLIET,** in the STATE OF ILLINOIS (hereinafter sometimes referred to for convenience as the "BOARD"), and **DOUGLAS GORDON HESBOL** (hereinafter sometimes referred to for convenience as the **SUPERINTENDENT"**), has been approved by a RESOLUTION adopted at the meeting of the BOARD held on July 27, 2004 and is appended to the MINUTES of said meeting.

THE PARTIES HEREBY AGREE for good and valuable consideration, receipt of which is hereby acknowledged, as follows:

1.  **EMPLOYMENT:** The Superintendent is hereby hired and retained from August 9, 2004 through and including June 30, 2007.

2.  **DUTIES:** The duties and responsibilities of the Superintendent shall be all those duties incident to the office of the Superintendent of Schools as set forth in the job description (contained in Board Policy, as adopted, and which may reasonably be amended from time to time), those obligations imposed by laws of the State of Illinois upon the Superintendent, and in addition thereto, to perform such other professional duties customarily performed by a Superintendent of Schools as from time to time may be assigned to the Superintendent by the Board.

    The Superintendent shall have charge of the administration of the schools under the direction of the Board; he shall be the chief executive officer for the Board; he shall recommend the selection, retention and dismissal of, and direct and assign, teachers and other employees of the School District under his supervision; he shall organize and direct the administrative and supervisory staff; he shall make recommendations to the Board concerning the budget, building plans, location of sites, and the selection of textbooks, instructional material, and courses of study; he shall direct the keeping of all records and accounts, and aid in the making of all reports, as required by the Board; he shall recommend rules, regulations, and procedures deemed necessary for the welfare of the School District; and in general he shall perform all other duties incident to the office of the Superintendent as the Board may delegate to him or as required by law.

3.  **COMPENSATION:** In consideration of the annual compensation of one hundred thousand dollars ($100,000) for the 2004-2005 school year, which shall be prorated at 11/12's for the 2004-2005 school year, the Superintendent hereby agrees to devote such time, skill, labor and attention to his employment, during the term of this Contract (except as otherwise provided in this Contract) in order to perform faithfully the duties

1

Exhibit

A

of Superintendent of Schools. Such compensation shall be paid in equal installments in accordance with the policy of the Board governing payment of salary to other certificated members of the professional staff, less such amounts as provided in this Contract, and other amounts as may be required by law. The Board retains the right to freeze the annual compensation, salary, and fringe benefits of the Superintendent for the second and third years of this Contract, if the performance goals are not achieved as elaborated upon in Section 5 of this Contract. Any additional adjustment in salary, and fringe benefits adjustment(s) shall not be lower than the annual compensation, salary, and fringe benefits paid by the Board as stated herein. Any adjustment in salary and fringe benefits made during the life of this Contract shall be or presently is in the form of amendment and shall become a part of this Contract. It is provided, however, that by so doing, it shall not be considered that the Board has entered into a new contract with the Superintendent or that the termination date of this Contract has been in any way extended except as may be specifically provided. The Board and the Superintendent, however, may enter into subsequent contracts or extensions of this Contract for additional periods of time, if both should agree, and said contract is reduced to writing.

4.  **DEFERRED COMPENSATION:** The Superintendent may elect that a portion of his compensation to be paid hereunder be used to purchase a tax sheltered annuity pursuant to Section 403(b) of the Internal Revenue Code of 1986, as amended and/or a deferred compensation plan pursuant to Section 457. The procedure for the election and terms and conditions of said exercise is more fully described in Board of Education policy, which policy is attached hereto and made a part hereof. It is understood and agreed that the cost of the purchase of said annuity shall be deducted from the Superintendent's annual compensation as set forth in Section 3 of this Contract, and shall not require an expenditure of funds by the Board above the amount paid to the Superintendent pursuant to said Section 3, except as may be later amended by the Board through the establishment of a non-contributory plan of deferred compensation.

5.  **EVALUATION:** At least annually, but not later than February 15th of each school year, the Board, during the term of this Contract, shall review with the Superintendent and provide him a written evaluation of the Superintendent's progress toward established goals and working relationships with the Board, the total staff and the community.

    The Board shall provide to the Superintendent, prior to February 1st each year, recommended performance goals for the Superintendent to complete in the succeeding years of this contract or any extension hereto. Said structure shall include the proposed method and means of measuring and evaluating the "completion" of the performance goals by the

2

Superintendent. The Board and Superintendent shall mutually agree to the performance goals to be completed each year. For the 2004-2005 contract year, the Superintendent shall (1) evaluate student performance; (2) review the curriculum and instructional services; (3) report to the School Board on his findings as to (a) student performance and (b) recommendations, if any, for curriculum or instructional changes as a result of his evaluation of student performance; and (4) provide short and long range financial projections and related recommendations on or before January 15, 2005. The presentation of the reports shall constitute the indicator of meeting the goal of student performance and academic improvement as required by Section 5 of this Contract and Section 10-23.8 of The Illinois School Code.

6. **CERTIFICATE:** The Superintendent shall furnish to the Board during the term of this Contract, a valid, appropriate, and properly registered certificate to act as Superintendent of Schools, in accordance with the laws of the State of Illinois and as directed by the Board.

7. **OTHER WORK:** The Superintendent may undertake consultation work, speaking engagements, writing, teach a college or university course, lecturing, or other professional duties and obligations, provided, however, that such other work shall not interfere in a material and substantial manner with the Superintendent's obligations as set forth herein.

8. **TERMINATION OF CONTRACT:** This employment contract may be terminated by:

    A. Mutual agreement of the parties.

    B. Retirement.

    C. The Superintendent shall be subject to discharge for cause provided the Board does not arbitrarily and capriciously call for said discharge. Reasons for discharge shall be given in writing to the Superintendent, who shall be entitled to notice and a hearing before the Board to discuss such causes. If the Superintendent chooses to be accompanied by legal counsel, he shall bear any costs therein involved. The Board hearing shall be conducted in closed session.

    Failure to comply with the terms and conditions of this Contract shall also be sufficient reason for discharge as provided herein. Nothing herein shall prohibit the Board from suspending the Superintendent with pay pending completion of the requirements of this paragraph. After the effective date of any such dismissal, the Superintendent shall not be entitled to any further payments of

3

compensation of any kind under this Contract, except that the Superintendent shall be entitled to any vested benefits payable under the terms and provisions of the Illinois Teachers' Retirement System, vested benefits under Board policies, or such other benefits as are required by law.

9. **PROFESSIONAL ACTIVITIES:** The Superintendent shall be encouraged, with prior Board approval, to annually attend one (1) national and three (3) state level professional conferences. Within budget constraints, as approved by the Board, the costs of the Superintendent's attendance at such professional conferences shall be paid by the Board.

10. **PROFESSIONAL DAYS:** The Superintendent shall receive up to five (5) professional days during the 2004-2005 school year for the purpose of completing research assignments related to securing his doctorate degree. Use of specific days shall be coordinated in advance with the Board President.

11. **VACATION:** For the 2004-2005 school year the Superintendent shall receive eighteen (18) working days of vacation. Effective with the 2005-2006 school year, the Superintendent shall receive twenty (20) workdays of vacation annually, exclusive of weekends and legal school holidays. Unused vacations will not be carried over. The scheduling of more than ten (10) consecutive vacation days shall be by agreement between the Board President and the Superintendent. Unused days may be reimbursed at the end of each school year upon receiving approval from the Board. The Superintendent shall receive the same annual holidays as received by the Business Office.

12. **SICK LEAVE:** The Superintendent shall be entitled to fifteen (15) days annually of sick leave to be taken pursuant to the provisions of law. Earned sick leave, which is unused, shall be allowed to accumulate. In addition, the Superintendent shall receive three (3) personal leave days each year. Unused personal leave days will convert to unused sick leave days at the end of each year. Upon retirement, the Superintendent may utilize any of such accumulated sick leave days for those purposes as may be permitted by law.

13. **HOSPITALIZATION/MAJOR MEDICAL INSURANCE:** During the term of this Contract, the Board shall provide and pay the premiums for hospitalization, major medical, dental, and vision insurance for the Superintendent and the dependent members of the Superintendent's immediate family (as defined by the contract of insurance then in effect), in accordance with the basic insurance coverage provided to the members of the School District's certificated professional staff.

4

14. **TERM LIFE INSURANCE:** The Board shall provide and pay the premium for term life insurance for the Superintendent during the term of this Contract in the amount of his annual salary.

15. **TRANSPORTATION AND TRAVEL EXPENSES:** The Board shall reimburse the Superintendent at the current Internal Revenue Service rate per mile for out of District automobile travel. The Superintendent shall be required, as a condition of employment, to use his own personal automobile to visit sites of schools, attend Board and community functions, and to attend conferences, meetings and workshops. The Superintendent shall be required to provide the Board with written substantiation of reimbursement amounts as required by the Internal Revenue Code of 1986, as amended, along with regulations thereunder. Travel expenses, supported by paid receipts, shall be reimbursed by the District in accordance with Board policy.

16. **MEMBERSHIP DUES:** The Board shall reimburse the Superintendent for dues and membership fees for the Illinois Association of School Administrators, American Association of School Administrators, Association for Supervision and Curriculum Development, local service organizations, and any other memberships approved by the Board.

17. **ACCUMULATION OF UNUSED SICK LEAVE DAYS FROM PREVIOUS SCHOOL DISTRICTS:** The Superintendent may transfer his unused sick leave days from other public school districts into his District sick leave account, with such transferred days only being available for use during the Superintendent's final two years of employment prior to retiring under TRS, with such written notice of a specific retirement date being on file with the District. The transferred unused sick leave days shall be verified in writing, including a signature from an authorized administrator, on official letterhead from the Superintendent's previous school districts. Such documentation shall be retained in the permanent records of the District, with copies being placed in the Superintendent's personnel file.

18. **INITIAL PHYSICAL EXAMINATION:** Prior to October 1, 2004, the Superintendent shall obtain a comprehensive medical examination of which an amount not to exceed $500.00 shall be paid by the District. A copy of the examination and statement from the physician certifying the physical competency of the Superintendent shall be given to the Board President, with such documentation being placed in the Superintendent's personnel file.

19. **WAIVER OF TENURE:** By accepting the terms of this Contract, the Superintendent waives all rights of tenure granted under Sections 24-11 through 24-16 of the Illinois School Code during the term of this Contract.

5

20. **EXTENSION OF CONTRACT-NON-RENEWAL:** This Contract shall be reviewed by the Board and the Superintendent on or before February 15, 2007 and may then be extended, upon such terms and conditions as may be mutually agreed to by the parties, and reduced to writing and signed by the parties after reviewing the Superintendent's "progress" toward meeting the goals. If a non-renewal decision is made by the Board, then such written notice shall be provided to the Superintendent on or before March 1, 2007. Nothing in this Agreement shall prevent the parties from extending this Agreement at any time during its term as allowed by law.

21. **NOTICE:** Any notice or communication permitted or required under this Contract shall be in writing and shall become effective on the day of mailing thereof by first class mail, registered, or certified mail, postage prepaid, and addressed:

If to the Board, to:

Board of Education
Laraway Community Consolidated
School District No. 70-C
275 W. Laraway Road
Joliet, Illinois 60436

If to the Superintendent, to:

Mr. Douglas Gordon Hesbol
801 LaSell Drive
Champaign, Illinois 61820

(or at the last address of the Superintendent contained in official Business Office records of the Superintendent.)

22. **ILLINOIS TEACHERS' RETIREMENT SYSTEM AND TEACHER HEALTH INSURANCE FUND CONTRIBUTIONS:** In addition to the annual salary stated in paragraph A.1 of this Contract, the Board shall pay on behalf of the Superintendent to the State of Illinois Teachers' Retirement System and the Teachers' Health Insurance Security Fund the Superintendent's required contributions to said pension system and health fund. The Superintendent shall not have any right or claim to said amounts, except as they may become available at the time of retirement or resignation from the State of Illinois Teachers' Retirement System and the Teacher Health Insurance Security Fund. Both parties acknowledge that the Superintendent did not have the option of choosing to receive the contributed amounts directly, instead of having such contributions paid by the Board to the Teachers' Retirement System and Teacher Health Insurance Security Fund, and further acknowledge that such contributions are made as a condition of employment to secure the Superintendent's future services, knowledge and experience.

6

23. **BREACH OF CONTRACT:** The Board and Superintendent acknowledge that they have in GOOD FAITH entered into this Contract with the intent that the obligations stated in or implied by the contract are to be fully carried out by the parties. The Superintendent acknowledges that the Board and District administration have spent considerable time and expense in reviewing applications and conducting interviews for the selection of the next Superintendent of Schools for the 2004-2005 school year and beyond. Further, the Superintendent acknowledges that the District, upon execution of this Contract by the Superintendent and its approval by the Board, shall notify unsuccessful candidates for the position of Superintendent of Schools that the position has been filled.

Accordingly, the Superintendent understands and agrees that in the event that the Superintendent breaches this Contract by resignation in order to accept employment from any other School District/System or for any other reasons affecting his employment in the District during the 2004-2005 or 2005-2006 school years, except for those caused by extenuating circumstances beyond the control of the Superintendent, the Superintendent shall pay to the District the sum of eight percent (8%) of his salary as provided in Section 3, Compensation of this Contract.

Such payment to be as and for AS LIQUIDATED DAMAGES together with any reasonable attorney fees and costs of suit suffered by the Board of Education in connection with any legal action necessary to collect said liquidated damages.

Provision has been made herein for liquidated damages in the event of breach of Contract by the Superintendent during the 2004-2005 or 2005-2006 school years, because the damages suffered by the Board, including but not limited to going through another superintendent search, loss of continuity in the educational program, and the expenditures of time, effort and funds to seek a suitable replacement, are substantial, but are extremely difficult to ascertain.

24. **BACKGROUND INVESTIGATION:** If the criminal background investigation required by Illinois law is not completed at the time this contract is signed, and the subsequent investigation report reveals that there has been such a conviction, this contract shall immediately become null and void.

7

25. **MISCELLANEOUS:**

25.1 This Contract shall include a one-time reimbursement of, not to exceed, five thousand dollars ($5,000.00) within twenty-four (24) months of signing this Contract to cover verified relocation expenses to a residence within reasonable driving distance of the school district. The Superintendent shall be reimbursed for paid receipts in accordance with Board Policies and Procedures.

25.2 This Contract has been executed in Illinois, and shall be governed in accordance with the laws of the State of Illinois in every respect.

25.3 This Contract may be executed in one or more counterparts, each of which shall be considered an original, and all of which taken together shall be considered one and the same instrument.

25.4 This Contract contains all the terms agreed upon by the parties with respect to the subject matter of this Contract and supersedes all prior contracts, arrangements, and communications between the parties concerning such subject matter, whether oral or written.

25.5 This Contract shall be binding upon the inure to the benefit of the Superintendent, his successors, assigns, heirs, executors, and personal representatives, and shall be binding upon, and inure to the benefit of the Board, its successors and assigns.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed in their respective names and in the case of the Board, by its President and Secretary on the day and year first above written.

SUPERINTENDENT:

_____

BOARD OF EDUCATION OF LARAWAY
COMMUNITY CONSOLIDATED SCHOOL
DISTRICT NO. 70-C
JOLIET, ILLINOIS

BY: _____
SAUL BRASS, President
Board V-pres in absence
of Saul Brass

ATTEST:

_____
LESLIE LINDHOLM, Secretary

Date: July 27, 2004

9

*File*

## SUPERINTENDENT'S EMPLOYMENT CONTRACT

**AGREEMENT** made this _17_ day of March, 2009, between the BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 70C, WILL COUNTY, ILLINOIS, hereinafter referred to as the "Board," and, DR. DOUGLAS GORDON HESBOL, hereinafter referred to as the "Superintendent," in consideration of the mutual covenants and promises contained herein.

This Agreement constitutes a successor administrative performance based employment contract entered into during the term of an existing, predecessor administrative performance based employment contract. In accordance with 105 ILCS 5/10-23.8 of the *Illinois School Code*, the Superintendent and Board confirm and acknowledge that the Superintendent has met the goals and indicators of student performance and academic achievement, as stated in the existing, predecessor contract.

### A. EMPLOYMENT AND COMPENSATION

1. **Salary and Term of Employment.** The Board hereby employs the Superintendent for five (5) years, commencing on July 1, 2008, and terminating on June 30, 2013, at an annual salary of One Hundred Forty Thousand Seven Hundred and Ninety-Five Dollars ($140,795.00) for the 2008-2009 contract year. The term "contract year" means July 1 through the next succeeding June 30.

   Each subsequent contract year of this Agreement, the Board shall increase the Superintendent's total Illinois Teacher Retirement System ("TRS") creditable earnings by six percent (6%) over the previous contract year's total reported TRS creditable earnings. The Superintendent's annual salary shall be adjusted in June of each contract year to guarantee that the total TRS creditable earnings for each contract year equal and not exceed a six percent (6%) increase from the previous contract year's total reported TRS creditable earnings, unless changes in TRS legislation allow a larger increase without penalty. The Superintendent's total earnings shall be reviewed by the Superintendent and the Board no later than June 15th of each contract year to verify that the Superintendent's total increased TRS creditable earnings each year do not exceed a six percent (6%) increase.

   The salary shall be payable in equal installments in accordance with the rules of the Board governing payments of other administrative staff members in the District. The Superintendent hereby accepts employment upon the terms and conditions hereinafter set forth.

2. **Teachers' Retirement System and Teachers' Health Insurance Security Fund.** In addition to the annual salary stated in Section A.1 of this Agreement, the Board shall pick up and pay on behalf of the Superintendent to the State of Illinois Teachers' Retirement System and the Teachers' Health Insurance Security

- 1 -

Exhibit

B

Fund the Superintendent's required contributions to said pension system and health fund. The Superintendent shall not have any right or claim to said amounts, except as they may become available at the time of retirement or resignation from the State of Illinois Teachers' Retirement System and the Teacher Health Insurance Security Fund, and further acknowledge that such contributions are made as a condition of employment to secure the Superintendent's future services, knowledge and experience.

B. **CONDITIONS OF EMPLOYMENT**

1. **Certificate.** During the term of this Agreement, the Superintendent shall hold a valid and properly registered certificate issued by the State of Illinois Teachers' Certification Board qualifying him to act as Superintendent of the School District.

2. **Waiver of Tenure.** The Superintendent acknowledges that, pursuant to Section 10-23.8 of the *Illinois School Code*, he waives any right to tenure in the School District by virtue of entering into this multi-year contract and any multi-year extension thereof.

3. **Criminal Conviction.** If the Superintendent is convicted of a criminal offense by which his employment is proscribed by Illinois law, this Agreement shall immediately become null and void.

C. **BENEFITS**

1. **Reimbursement of Business Expenses.** The Board shall reimburse the Superintendent for reasonable monthly expenses, including but not limited to cellular phone/pda and its related services, incurred in the performance of his duties. Itemization shall be made by the Superintendent of all expenses incurred.

2. **Sick Leave/Personal Leave.** The Superintendent shall be granted sick leave, as defined in Section 24-6 of the *School Code*, in the amount of fifteen (15) working days per year. All unused sick leave benefits shall accumulate up to three-hundred forty (340) days. The Superintendent shall be granted three (3) personal leave days per year. Unused personal days shall accumulate as sick leave days.

3. **Insurance Benefits.** The following insurance benefits shall be provided at Board expense:

a) Major medical and hospitalization insurance, including dental and vision, for the Superintendent and his family; and

b) Term life insurance in the amount of $200,000

- 2 -

4. **Vacation.** The Superintendent shall receive thirty (30) working days of vacation annually, exclusive of weekends, legal and school year holidays, provided, however, that any vacation time in excess of ten (10) vacation days shall be mutually agreed upon by the Board President and the Superintendent. Unused vacation days shall not accumulate. However, accumulated unused vacation days may be reimbursed at the Superintendent's then current per diem rate the end of each contract year upon receiving approval from the Board, but such approval for unused days not in excess of 10 each year shall not be withheld. The Superintendent is entitled to all legal holidays and holidays as received by the Business Office.

5. **Professional and Civic Organizations.** Subject to prior approval of the Board, the Superintendent shall be reimbursed for all dues and membership fees to a reasonable number of professional organizations, including but not limited to Illinois Association of School Administrators and American Association of School Administrators. The Superintendent is also encouraged to participate in local civic and fraternal organizations in the interest of promoting a better understanding of the School District and its concerns. Subject to its prior approval, the Board shall pay the dues incurred through membership in such organizations. A list of professional and civic organization memberships and their dues and membership fees shall be discussed with the Board each year in connection with the development and adoption of the School District Budget for the coming year.

6. **Professional Meetings Attendance.** The Superintendent shall be encouraged, with prior Board approval, to annually attend two (2) national and three (3) state level professional conferences. Within budget constraints, as approved by the Board, the costs of the Superintendent's attendance at such professional conferences shall be paid by the Board. In addition, the Superintendent may attend any conferences at which the Superintendent will make presentations on behalf of the School District

7. **Annuities and Deferred Compensation.** From the annual salary stated in Section A.1 of this Agreement, the Superintendent may (1) annually defer compensation pursuant to and in accordance with the terms of an eligible state deferred compensation plan as described in Section 457 of the *Internal Revenue Code of 1986,* as amended, if adopted by the Board, or (2) authorize a salary reduction in order that the Board may purchase an annuity policy for the Superintendent as described in Section 403(b) of the *Internal Revenue Code of 1986,* as amended, provided that the Superintendent confirms that any such deferrals or reductions for purchase of annuities are within *Internal Revenue Code* limitations.

- 3 -

8. **Other Benefits.** The Superintendent shall be allowed such other privileges, leaves, and fringe benefits as are commonly extended to other certificated personnel.

9. **Automobile Transportation Expenses.** The Board shall reimburse the Superintendent at the current Internal Revenue Service rate per mile for out of School District automobile travel. The Superintendent shall be required, as a condition of employment, to use his own personal automobile to visit sites of schools, attend Board and community functions, and to attend conferences, meetings and workshops. The Superintendent shall be required to provide the Board with written substantiation of reimbursement amounts as required by the *Internal Revenue Code of 1986*, as amended, along with regulations thereunder. Travel expenses, supported by paid receipts, shall be reimbursed by the School District in accordance with Board policy.

10. **Post-Retirement.** Upon retirement, the Board shall provide the Superintendent with the following post-retirement benefits:

    a) A post retirement lump sum payment of $3,000 per each contract year the Superintendent has worked and completed in the School District to a 403b annuity on behalf of the Superintendent not to exceed IRS contribution limits.

    b) School District major medical and hospitalization insurance, including dental and vision, for the Superintendent and Superintendent's spouse with no required contribution from the Superintendent until the Superintendent and Superintendent's spouse are individually age 65 or otherwise individually Medicare eligible. If the Superintendent dies prior to age 65, the Superintendent's widow shall be allowed to continue in the District health plan with no required contribution from her until she reaches age 65 or is otherwise Medicare eligible.

    c) Board payment at the Superintendent's then per diem rate for twenty (20) accumulated unused sick days not otherwise used toward TRS for service credit.

    All such payment shall be made no later than thirty (30) days after the Superintendent's last day of work and receipt of final paycheck for regular earnings.

D. **POWERS AND DUTIES**

1. **Duties.** The duties and responsibilities of the Superintendent shall be all those duties incident to the office of the Superintendent of Schools as set forth in the job description (contained in Board Policy, as adopted, and which may reasonably be amended from time to time), those obligations imposed by laws of the State of

- 4 -

Illinois upon the Superintendent, and in addition thereto, to perform such other professional duties customarily performed by a Superintendent of Schools as from time to time may be assigned to the Superintendent by the Board.

The Superintendent shall have charge of the administration of schools under the direction of the Board; he shall be the chief executive officer for the Board; he shall recommend the selection, retention and dismissal of, and direct and assign, teachers and other employees of the School District under his supervision; he shall organize and direct the administrative and supervisory staff; he shall make recommendations to the Board concerning the budget, building plans, location of sites, and the selection of textbooks, instructional material, and courses of study; he shall direct the keeping of all records and accounts, and aid in the making of all reports, as required by the Board; he shall recommend rules, regulations, and procedures deemed necessary for the welfare of the School District; and in general he shall perform all other duties incident to the office of the Superintendent as the Board may delegate to him or as required by law

2. **Extent of Service**. The Superintendent may undertake consultation work, speaking engagements, writing, teach a college or university course, lecturing, or other professional duties and obligations, provided, however, that such other work shall not interfere in a materials and substantial manner with the Superintendent's obligations as set forth herein.

E. **RENEWAL, EXTENSION AND TERMINATION OF CONTRACT**

1. **Non-Renewal**. Notice of intent not to renew this Agreement shall be given to the Superintendent by the Board by February 1 of the year in which this Agreement expires. Said notice shall be in writing and state the specific reason for non-renewal. Failure to provide timely notice of non-renewal shall extend this Agreement for one (1) additional contract year. Within ten (10) days after receipt of a notice of intent not to renew this Agreement, the Superintendent may request a closed session hearing on the dismissal.

2. **Renewal**. On or before January 15 of the contract year in which this Agreement expires, the Board and Superintendent may renew the Superintendent's employment upon such terms and conditions as they may mutually agree. In such event, the Board shall enter into a new contract of employment.

3. **Contract Extensions**. Prior to the end of any year of this Agreement, the Board and Superintendent may mutually agree to extend the employment of the Superintendent for a period not to exceed the maximum permitted by law provided all the performance and improvement goals agreed upon in Section F. 2 of this Agreement have been met.

- 5 -

4.  **Grounds for Termination.** This employment contract may be terminated by:

    a)    **Mutual agreement.**

    b)    **Disability of the Superintendent.** Should the Superintendent be unable to perform the duties and obligations of this Agreement, by reason of illness, accident or other cause beyond the Superintendent's control and such disability exists for a period of more than six (6) months after the exhaustion of the Superintendent's sick and vacation leave, or if such disability is permanent, irreparable, or of such nature as to make the performance of Superintendent's duties impossible, the Board, at its option, may terminate this Agreement, whereupon the respective duties, rights and obligations of the parties shall terminate. Prior to termination for disability, the Superintendent may request a hearing before the Board.

    c)    **Discharge for Cause.** The Superintendent shall be subject to discharge for cause provided the Board does not arbitrarily and capriciously call for said discharge. Reasons for discharge shall be given in writing to the Superintendent, who shall be entitled to notice and a hearing before the Board to discuss such causes. If the Superintendent chooses to be accompanied by legal counsel, he shall bear any costs therein involved. The Board hearing shall be conducted in a closed session.

    Failure to comply with the terms and conditions of this Agreement after notification and a reasonable opportunity to correct shall also be sufficient reason for discharge as provided herein. Nothing herein shall prohibit the Board from suspending the Superintendent with pay pending completion of the requirements of this paragraph. After the effective date of any such dismissal, the Superintendent shall not be entitled to any further payments of compensation of any kind under this Agreement, except that the Superintendent shall be entitled to any vested benefits payable under the terms and provisions of the Illinois Teachers' Retirement System, vested benefits under Board policies, or such other benefits as are required by law.

    d)    **Death.**

F.  **EVALUATION AND PERFORMANCE AND IMPROVEMENT GOALS**

1.  **Evaluation.** At least annually, but not later than February 1st of each contract year, the Board, during the term of this Agreement, shall review with the Superintendent and provide him a written evaluation of the Superintendent's progress toward established goals and working relationships with the Board, the total staff and the community.

2. **Goals and Indicators of Student Performance and Academic Improvement**. The Board shall provide to the Superintendent, prior to February 1st of each contract year, recommended performance goals for the Superintendent to complete in the succeeding years of this Agreement or any extension hereto. Said structure shall include the proposed method and means of measuring and evaluating the "completion" of the performance goals by the Superintendent. The Board and Superintendent shall mutually agree to the performance goals to be completed each contract year. The presentation of reports shall constitute the indicator of meeting the goals of student performance and academic improvement as required by Section E. 3 of this Agreement and Section 10-23.8 of the *Illinois School Code.*

## G. TECHNICAL CLAUSES

1. **Notice**. Any notice or communication permitted or required under this Agreement shall be in writing and shall become effective on the day of mailing thereof by first class mail, registered, or certified mail, postage prepaid, and addressed:

   If to the Board, to:     Board of Education
   Laraway Community Consolidated
   School District No. 70-C
   275 W. Laraway Road
   Joliet, Illinois 60436

   If to the Superintendent, to:  Dr. Douglas Gordon Hesbol
   676 Heartland Drive
   Yorkville, Illinois 60560

   (or at the last address of the Superintendent contained in official Business Office records of the Superintendent.)

2. **Savings Clause**. If any portion of this Agreement is deemed illegal due to conflict with State or Federal law, the remainder of the Agreement shall remain in full force and effect; further, this Agreement does not constitute any obligation either written or implied for re-employment beyond the term set forth herein.

3. **Applicable Law.** This Agreement has been executed in the State of Illinois and shall be governed in accordance with the laws of the State of Illinois in every respect.

- 7 -

4.  **Headings and Numbers.** Paragraph numbers and headings have been inserted for convenience of reference only, and if there shall be any conflict between such headings or numbers and the text of this Agreement, the text shall control.

5.  **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered an original, and all of which taken together shall be considered one and the same instrument.

6.  **Advice of Counsel.** Both parties have had the opportunity to seek advice of counsel.

7.  **Entire Agreement.** This Agreement contains all of the terms agreed upon by the parties with respect to the subject matter of this Agreement and supersedes all prior agreements, arrangements, and communications between the parties concerning such subject matter whether oral or written. Except as may otherwise be provided herein, no subsequent alteration, amendments, change or addition to this Agreement shall be binding upon the parties unless reduced in writing and duly authorized and signed by each of the parties.

8.  **Assignment.** This Agreement shall be binding upon the injury to the benefit of the Superintendent, his successors, assigns, heirs, executors, and personal representatives, and shall be binding upon, and inure to the benefit of the Board, its successors and assigns.

**IN WITNESS WHEREOF,** the parties have executed this Agreement this *17* day of March, 2009.

SUPERINTENDENT

BOARD OF EDUCATION OF
LARAWAY COMMUNITY
CONSOLIDATED SCHOOL DISTRICT
NO. 70-C, WILL COUNTY, ILLINOIS

_____
**Dr. Douglas Gordon Hesbol**

By: _____
        **President**


ATTEST:

_____
        **Secretary**

- 8 -

## RESOLUTION/CONTRACT AMENDMENT

WHEREAS, the **BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 70-C, WILL COUNTY, ILLINOIS,** hereinafter referred to as the "Board," and, **DR. DOUGLAS GORDON HESBOL**, hereinafter referred to as the "Superintendent", entered into an original employment contract on ~~February~~ March __17__, 2009, whereby the Board employed the Superintendent for the period of July 1, 2008 to June 30, 2013, and established certain other employment conditions; and

WHEREAS, the Board and Superintendent are desirous of making certain changes to the Superintendent's Contract as established at the meeting of the Board on ~~February~~ March 17, 2009; and

NOW THEREFORE, the parties agree as follows:

1) In accordance with Section 10-23.8 of the Illinois School Code (105 ILCS 5/10-23.8), the Superintendent and the Board of Education confirm and acknowledge that the Superintendent has met the currently applicable goals and indicators of student performance and academic achievement of the School District, as provided in paragraph F.2 of the Employment Contract.

2) To amend paragraph A.1 of the Employment Contract to provide that the employment term has been extended by one (1) year; therefore, the new effective termination date is June 30, 2014.

3) All other terms and conditions of said Employment Contract shall remain in full force and effect.

Member __Knight__ moved to adopt this Resolution/Contract Amendment, and Member __Popek__ seconded the motion. Upon roll call vote, the members voted as follows:

Ayes: __6__ Nays: __0__ Absent: __1__

_(signature)_
Superintendent

_(signature)_
President, Board of Education
Laraway Community Consolidated School
District No. 70-C,
Will County, Illinois

ATTEST:

_(signature)_
Secretary, Board of Education

**Exhibit**

**C**

and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

Mr. Knight moved, seconded by Mr. Popek, "to approve the multi-year employment contract for Dr. Hesbol, as discussed in Executive Session and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

### ADJOURNMENT:

Mr. Knight moved, seconded by Mr. Brass, "to adjourn the board meeting." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.


_____      _____
Date                                          President, Mr. Glasscock


_____      _____
Date                                          Secretary, Mrs. Fleet

Page 4
March 17, 2009
Board Minutes

**LARAWAY C.C.S.D. 70-C**
**MINUTES**
**REGULAR BOARD MEETING**
**MARCH 17, 2009**

President Glasscock called the meeting to order at 6:35 p.m. The Pledge was recited.

PRESENT:   Brass, Fleet, Glasscock, Knight, McCullum and Popek

ABSENT:   Peet

MODIFICATION TO AGENDA:

Staff resignation

Mr. Popek moved, seconded by Mr. Knight, "to approve the modification to the agenda." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

PUBLIC COMMENTS:

None

SUPERINTENDENT'S REPORT:

1. Family Literacy Night is taking place tonight
2. Laraway hosted the 5th Grade Boys/Girls Tournament and we had a spectacular night in concessions
3. Track schedule is now available
4. Thursday, March 12 was The Great Teacher Award
5. Friday, March 13 was the recognition of the 7th and 8th Grade Boys at the IHSA finals in Peoria
6. Local Headstart Program looking at possibility of using Oak Valley classrooms
7. Press Plus 66 has arrived
8. Spring Break is March 23 – March 27
9. Former Superintendent Mr. Ursitti passed away
10. City of Joliet has a timeline for Laraway Road changes

COMMITTEE REPORTS:

Budget and Finance:

Bills, Payroll and Treasurer's Report

Page 1
March 17, 2009
Board Minutes

and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

Mr. Knight moved, seconded by Mr. Popek, "to approve the multi-year employment contract for Dr. Hesbol, as discussed in Executive Session and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

ADJOURNMENT:

Mr. Knight moved, seconded by Mr. Brass, "to adjourn the board meeting." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

_4/21/09_
Date

_Scott Glasscock_
President, Mr. Glasscock

_4/21/09_
Date

_Mrs. Fleet_
Secretary, Mrs. Fleet

## RESOLUTION/CONTRACT AMENDMENT

WHEREAS, the **BOARD OF EDUCATION OF LARAWAY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 70-C, WILL COUNTY, ILLINOIS,** hereinafter referred to as the "Board," and, **DR. DOUGLAS GORDON HESBOL,** hereinafter referred to as the "Superintendent", entered into an original employment contract on ~~February~~ March _17_, 2009, whereby the Board employed the Superintendent for the period of July 1, 2008 to June 30, 2013, and established certain other employment conditions; and

WHEREAS, the Board and Superintendent are desirous of making certain changes to the Superintendent's Contract as established at the meeting of the Board on ~~February~~ March _17_, 2009; and

NOW THEREFORE, the parties agree as follows:

1) In accordance with Section 10-23.8 of the Illinois School Code (105 ILCS 5/10-23.8), the Superintendent and the Board of Education confirm and acknowledge that the Superintendent has met the currently applicable goals and indicators of student performance and academic achievement of the School District, as provided in paragraph F.2 of the Employment Contract.

2) To amend paragraph A.1 of the Employment Contract to provide that the employment term has been extended by one (1) year; therefore, the new effective termination date is June 30, 2014.

3) All other terms and conditions of said Employment Contract shall remain in full force and effect.

Member ___Knight___ moved to adopt this Resolution/Contract Amendment, and Member ___Popek___ seconded the motion. Upon roll call vote, the members voted as follows:

Ayes: ___6___ Nays: ___0___ Absent: ___1___

___[signature]___
Superintendent

___[signature]___
President, Board of Education
Laraway Community Consolidated School
District No. 70-C,
Will County, Illinois

ATTEST:

___[signature]___
Secretary, Board of Education

and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

Mr. Knight moved, seconded by Mr. Popek, "to approve the multi-year employment contract for Dr. Hesbol, as discussed in Executive Session and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

ADJOURNMENT:

Mr. Knight moved, seconded by Mr. Brass, "to adjourn the board meeting." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

| | |
|---|---|
| _____ | _____ |
| Date | President, Mr. Glasscock |
| _____ | _____ |
| Date | Secretary, Mrs. Fleet |

Page 4
March 17, 2009
Board Minutes

**LARAWAY C.C.S.D. 70-C**
**MINUTES**
**REGULAR BOARD MEETING**
**MARCH 17, 2009**

President Glasscock called the meeting to order at 6:35 p.m. The Pledge was recited.

PRESENT:     Brass, Fleet, Glasscock, Knight, McCullum and Popek

ABSENT:     Peet

MODIFICATION TO AGENDA:

     Staff resignation

     Mr. Popek moved, seconded by Mr. Knight, "to approve the modification to the agenda." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

PUBLIC COMMENTS:

     None

SUPERINTENDENT'S REPORT:

1. Family Literacy Night is taking place tonight
2. Laraway hosted the 5th Grade Boys/Girls Tournament and we had a spectacular night in concessions
3. Track schedule is now available
4. Thursday, March 12 was The Great Teacher Award
5. Friday, March 13 was the recognition of the 7th and 8th Grade Boys at the IHSA finals in Peoria
6. Local Headstart Program looking at possibility of using Oak Valley classrooms
7. Press Plus 66 has arrived
8. Spring Break is March 23 – March 27
9. Former Superintendent Mr. Ursitti passed away
10. City of Joliet has a timeline for Laraway Road changes

COMMITTEE REPORTS:

     <u>Budget and Finance:</u>

     Bills, Payroll and Treasurer's Report

and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

Mr. Knight moved, seconded by Mr. Popek, "to approve the multi-year employment contract for Dr. Hesbol, as discussed in Executive Session and pending attorney review." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

ADJOURNMENT:

Mr. Knight moved, seconded by Mr. Brass, "to adjourn the board meeting." On a roll call vote, Brass, Fleet, Glasscock, Knight, McCullum and Popek voted aye. There were no nays. Motion passed 6-0.

_4/21/09_
Date

_Scott Glasscock_
President, Mr. Glasscock

_9/21/09_
Date

_Mrs. Fleet_
Secretary, Mrs. Fleet

Page 4
March 17, 2009
Board Minutes

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
WILL COUNTY, ILLINOIS

26,3 AUG 13 PM 12: 05

CLERK, CIRCUIT COURT
WILL COUNTY, ILL., NO.

**13L 0646**

DR. DOUGLAS GORDON HESBOL,

Plaintiff,

v.

NO.

BOARD OF EDUCATION OF
LARAWAY COMMUNITY
CONSOLIDATED SCHOOL
DISTRICT 70-C and GARY KNIGHT,
DEBRA RAUSCH, MARGE FLEET,
SCOTT GLASSCOCK, DAVID
MATENAER, PHIL RAUSCH and
GARY WASHINGTON, each in their
individual capacities,

Defendants.

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Pursuant to Supreme Court Rule 222(B), Mark C. Metzger, counsel for the above-named Plaintiff certifies that Plaintiff seeks money damages in excess of Fifty Thousand and 00/100ths Dollars ($50,000.00).

_____
Mark C. Metzger

Subscribed and Sworn to this
13TH Day of August, 2013.

_____
Notary Public

TARA J MCKENNA
OFFICIAL SEAL
NOTARY PUBLIC
STATE OF ILLINOIS
MY COMMISSION EXPIRES
SEPTEMBER 20, 2015

Mark C. Metzger (06201626)
Law Office of Mark C. Metzger
34 W. Chicago Avenue, Suite B
Naperville, IL 60540
630-355-5555