IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. DOUGLAS GORDON HESBOL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BOARD OF EDUCATION OF LARAWAY ) <br> COMMUNITY CONSOLIDATED SCHOOL ) <br> DISTRICT 70-C, GARY KNIGHT, DEBRA ) <br> RAUSCH, MARGE FLEET, SCOTT ) <br> GLASSCOCK, DAVID MATENAER, PHIL ) <br> RAUSCH and GARY WASHINGTON, ) <br> ) <br> Defendants. ) <br> ) | 13 C 6956 <br><br> Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

The Defendants have moved to dismiss Plaintiff Dr. Douglas Gordon Hesbol's claims for breach of express contract (Count I), breach of implied contract (Count II), reformation (Count III), misrepresentation (Count IV), and deprivation of due process (Count V). The Court has original jurisdiction over Dr. Hesbol's due process claim and supplemental jurisdiction over his state law claims. The Court dismisses Dr. Hesbol's due process claim based on his removal as superintendent as barred by the statute of limitations and dismisses his due process claim based on contract termination because he has no protectable property interest. The Court retains supplemental jurisdiction over his state law claims because all of Dr. Hesbol's claims turn on whether his contract was valid, which the Court had to determine to rule on his due process claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-41 (district court has discretion to retain supplemental jurisdiction after dismissing all claims over which it had

original jurisdiction). Because the contract is not valid, and for the reasons discussed herein, the Court dismisses all of Dr. Hesbol's claims.

## **BACKGROUND**

The Court takes the following allegations from the Complaint, which Dr. Hesbol filed in the Circuit Court of Will County on August 13, 2013, and treats them as true for purposes of the Defendants' motion. Dr. Hesbol entered a contract with the Board of Education of Laraway Community Consolidated School District 70-C ("the Board") to serve as Superintendent of Schools. Dr. Hesbol entered a second contract with the Board on March 17, 2009 for a period of service from July 1, 2008, to June 30, 2013. That same day, the Board amended the second contract, which extended the termination date of the contract to June 30, 2014. Each contract contained a provision calling for the Board to later adopt goals to meet the statutory requirement that a multiyear contract have such items included. This practice was standard among school districts in Illinois.

In May 2011, a federal district court held that a superintendent's contract that did not contain goals at the time of execution violated 105 ILCS 5/10-23.8. Armed with this ruling, a Board member dissatisfied with Dr. Hesbol's refusal to accept direction from her began a campaign to remove Dr. Hesbol as superintendent. On August 11, 2011, Dr. Hesbol received a list of purported actions and failings that the Board believed was cause for his ouster. Dr. Hesbol responded to the list in writing. The Board removed Dr. Hesbol as superintendent on August 12, 2011. The Board offered to allow Dr. Hesbol to serve as a principal at a school in the district with the same salary and benefits he received as a superintendent. On August 12, 2012, the Board told Dr. Hesbol that it would terminate his contract.

## LEGAL STANDARD

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* This requires enough factual content to create a reasonable expectation that discovery will reveal evidence of wrongdoing. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

At issue is whether Dr. Hesbol's contract to serve as school superintendent is valid under Illinois law. This issue is common to all claims. Because this issue implicates an issue of state law that the Illinois Supreme Court has not addressed, the Court must predict how the Illinois Supreme Court would decide the issue. *See Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001). This is not the first time a court in this district has addressed this issue. *See Wynn v. Bd. of Educ. of Sch. Dist. No. 159*, 815 F. Supp. 2d 1007, 1015 (N.D. Ill. 2011). As discussed below, the Court finds the district court's reasoning in *Wynn* is persuasive.

### A. The Illinois School Code

Under the Illinois School Code, the school board makes all employment decisions pertaining to the superintendent. 105 ILCS 5/10-16.7. But the School Code limits the school board's authority to those powers specifically enumerated in the School Code and "all other powers not inconsistent" with the School Code. 105 ILCS 5/10-20. According to the School Code, "school districts may only employ a superintendent under either a contract for a period not exceeding one year or a performance-based contract for a period not exceeding 5 years." 105

ILCS 5/10-23.8. And "[e]ach performance-based contract shall include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine." *Id.*

The School Code's language concerning performance-based contracts is clear and, therefore, this Court must apply it as written. *Bd. of Educ., Proviso Twp. Sch. Dist. No. 209 v. Jackson*, 927 N.E.2d 206, 213-14 (Ill. App. Ct. 2010) (School Code's clear and unambiguous language gives school board discretion to formulate goals and the manner in which to measure goals). The School Code's use of the word "shall" leaves no room for interpretation—it requires "goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent" in performance-based contracts. *See Wynn*, 815 F. Supp. 2d at 1015 (performance-based superintendent contract violated School Code because it did not include goals).

The plain language of the School Code also indicates that the "goals and indicators of student performance and academic improvement" must be in a performance-based contract at the time of execution. The clause immediately preceding this requirement states "[n]o performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all performance and improvement goals *contained in* the contract have been met." 105 ILCS 5/10-23.8 (emphasis added). This clause contemplates a contract that has performance and improvement goals in it. *See Wynn*, 815 F. Supp. 2d at 1015 ("[T]he plain language of the statute requires that a multi-year, superintendent agreement include the goals and indicators of student performance at the time of the agreement's execution.").

B.  **Breach of Contract**

Here, there is no dispute that Dr. Hesbol's contract does not contain any performance or improvement goals. Dr. Hesbol's contract is a multiyear contract because it started on July 1, 2008, and was to terminate on June 30, 2013. An amendment to Dr. Hesbol's contract extended the termination date to June 30, 2014. Because it spanned more than one year, Dr. Hesbol's contract was a performance-based contract under the School Code. As a performance-based contract, it had to contain goals and indicators of student performance and academic improvement.

Contrary to Dr. Hesbol's contention, the School Code does not require "detailed" goals. Rather, broad goals are acceptable so long as they are measurable and legitimate. *See Bd. of Educ., Proviso Twp. Sch. Dist. No. 209*, 927 N.E.2d at 215. This undermines Dr. Hesbol's argument that "fixing goals at the outset of the life of a multiyear contract" is too rigid as school boards can formulate flexible goals that accommodate changing needs. *See id.* (identifying "increasing test scores, adhering to a five-year financial plan, promoting parental involvement, increasing professional growth and reducing discipline referrals" as permissible goals). Moreover, if goals set forth in a performance-based contract were to become obsolete, a school board and a superintendent could amend the contract to modify the goals contained in the contract.

Because Dr. Hesbol's contract did not contain any goals, it is not a valid contract. "Illinois law provides that ultra vires contracts entered into by municipal corporations are invalid." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 308 (7th Cir. 2011) (citing *McMahon v. City of Chicago*, 789 N.E.2d 347, 350 (Ill. App. Ct. 2003)). The Board exceeded its authority under the School Code by entering a performance-based contract with Dr. Hesbol that did not contain any goals. "There is no question that contracts which are in violation of law are null and

void." *Shaly v. Montgomery*, 802 F.2d 918, 922 (7th Cir. 1986). Consequently, there is no contract between the Board and Dr. Hesbol. Because there is no contract, there is no breach. Accordingly, this Court dismisses Count I of Dr. Hesbol's complaint.

### C. Breach of Implied Contract

Similarly, there is no breach of an implied contract. Under Illinois law, an implied contract is "a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011). As discussed above, the Board did not have the authority to enter Dr. Hesbol's contract—implied or otherwise. *See also Wynn*, 815 F. Supp. 2d at 1017 ("Like an express contract, '[i]mplied contracts with municipalities that are *ultra vires,* contrary to statutes, are unenforceable.' ") (citing *McMahon*, 789 N.E.2d at 352). Therefore, this Court dismisses Count II of Dr. Hesbol's complaint.

### D. Reformation

Moreover, Dr. Hesbol has not shown that Dr. Hesbol's contract fails to reflect the parties' agreement. Under Illinois law, "[r]eformation is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing." *Indiana Ins. Co. v. PANA Cmty.Unit. Sch. Dist. No. 8*, 314 F.3d 895, 903-04 (7th Cir. 2002) (applying Illinois law). It requires the party seeking contract reformation to show clear and convincing evidence that the parties reached an agreement, which they agreed to reduce to writing, and that someone made a mistake when reducing the agreement to writing. *Id.* Here, Dr. Hesbol does not allege that anyone made a mistake when reducing the agreement to writing. Rather, Dr. Hesbol claims that the parties agreed to "later adopt goals to meet the requirement that a multiyear contract have such items included." (Compl. ¶ 12.) Dr. Hesbol's contract reflects

the parties' agreement and, therefore, does not require reformation. That agreement is invalid, as "[a] municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action." *McMahon*, 789 N.E.2d at 352. Consequently, this Court dismisses Count III of Dr. Hesbol's complaint.

### E. Misrepresentation/Want of Good Faith & Fair Dealing/Estoppel

Dr. Hesbol's "misrepresentation/want of good faith & fair dealing/estoppel" claim fails because he presumably knew the limitations of the Board's authority to enter a multiyear contract with a superintendent. *See McMahon*, 789 N.E.2d at 350 ("A prospective contractor who deals with a municipal corporation is presumed to know the limitations of the power of the city officials to enter into contracts."). In short, Dr. Hesbol blames the Board for leading him to believe that the agreement he reached with the Board was valid. But "as a general principle of contract law, statutes and laws in existence at the time a contract is executed are considered part of the contract. It is presumed that parties contract with knowledge of the existing law." *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 959 (7th Cir. 2003). Dr. Hesbol does not allege that he did not know about 105 ILCS 5/10-23.8. In fact, Dr. Hesbol's contract refers to it. Consequently, Dr. Hesbol has not rebutted the presumption that he knew about the limitations imposed by 105 ILCS 5/10-23.8.

Moreover, Dr. Hesbol's allegations belie any suggestion that the Board's actions prior to entering Dr. Hesbol's contract were in bad faith or misleading. Dr. Hesbol alleges that he and the Board did what had become the norm. (*See*, *e.g.*, Compl. ¶ 22.) Dr. Hesbol acknowledges that what he and the Board did, enter a multiyear contract without goals but with a provision calling for the later adoption of goals, had become common practice in Illinois. (*Id.*) That others were

doing it does not make it any less illegal but it does make it less likely that the Board alone is responsible.[1] Therefore, this Court dismisses Count IV of Dr. Hesbol's complaint.

**F.     Due Process**

The statute of limitations bars Dr. Hesbol's due process claim based on his removal as Superintendent. Although 42 U.S.C. § 1983 provides a federal cause of action, the statute of limitations for personal injury torts in the state in which the claim arose applies. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Illinois, which is where Dr. Hesbol's claim arose, the statute of limitations for a personal injury claim is two years. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996).

Federal law governs when that statute of limitations commences, however. *Wallace*, 549 U.S. at 388. Under federal law, the statute of limitations on a claim begins to run when the cause of action accrues. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013). A claim accrues when the plaintiff can file suit and obtain relief. *Id.* For torts, the statute of limitations begins to run when the wrongful act or omission results in damages. *Wallace*, 549 U.S. at 391.

Here, Dr. Hesbol's § 1983 claim accrued on August 12, 2011, when he learned of his removal. According to Dr. Hesbol, he received a list of reasons for his removal on August 11, 2011. (Compl. ¶ 30.) On August 12, 2011, following "perfunctory consideration" of his written response, the Board informed Dr. Hesbol of its decision to remove him as Superintendent. (Compl. 34.) Dr. Hesbol knew at that time that he had not received a formal hearing concerning

---

[1] Further, Dr. Hesbol agreed to a one-year contract extension the same day he entered his five-year contract. This Court need not decide whether the extension entered the same day as the underlying contract violates the School Code's five-year limit on performance-based contracts. It is sufficient to note that Dr. Hesbol, by agreeing to this particular structure for what amounts to a six-year contract, understood what the School Code required.

his removal, which is the basis for his § 1983 claim concerning his removal. (*See* Compl. ¶¶369-71.) But Dr. Hesbol did not file his Complaint until August 13, 2013, which is more than two years after his claim accrued. Consequently, the statute of limitations bars the claim. Therefore, this Court dismisses the claim.

Though removed from his position as Superintendent in August 2011, Dr. Hesbol alleges that the Board would allow him to serve as a principal with the salary and benefits of his Superintendent contract unchanged. (Compl. ¶ 35.) According to Dr. Hesbol, that changed in August 2012 when he learned that his contract would terminate two years early. (Compl. ¶ 37.) Even if the termination of his contract were to give rise to a second cause of action that accrued in August 2012, that claim could not proceed because Dr. Hesbol does not have a protectable property interest in continued employment. The basis for Dr. Hesbol's due process claim is his contract. As discussed above, that contract is invalid. Therefore, Dr. Hesbol does not have a legitimate claim of entitlement to it. *See Wynn*, 815 F. Supp. 2d at 1017 (no property interest in superintendent employment contract that lacked goals). Therefore, Dr. Hesbol does not have a claim under § 1983 based on his removal as Superintendent or the termination of his contract. Accordingly, this Court dismisses Count V in its entirety.

## CONCLUSION

For the reasons stated herein, this Court grants the Defendants motion to dismiss each claim in the Complaint.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 3, 2014